UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CASE NO. 08-10656

LEVITRON, L.L.C. SECTION "B"

    DEBTOR CHAPTER 7
******************************************************************************
RONALD J. HOF, CHAPTER 7 TRUSTEE
    PLAINTIFF

VERSUS ADV. P. NO. 10-1032

JACOB CHANDLER, RONALD E. SANDERS
AND DEBORAH SANDERS
    DEFENDANTS

## MEMORANDUM OPINION

This matter came on for trial on February 10, 2011 on the complaint of the Chapter 7 Trustee against the defendants, Jacob Chandler and Ronald and Deborah Sanders. For the reasons set forth below, the court finds for the Trustee.

At issue here is the sum of $160,000 that was loaned by Douglas Broussard, a member of the debtor L.L.C., to the debtor on April 8, 2003. Defendant Chandler, who was the manager of Levitron, wrote multiple checks totaling that amount to himself and defendants Ronald and Deborah Sanders, as well as to the Sanders' mortgagee. The checks were cashed and the funds used to pay various personal expenses of the defendants. The defendants characterized their use of the money as a loan from the debtor L.L.C. Broussard's characterization of their use of the funds is somewhat less charitable.

Although the court has no doubt that Chandler and Mr. Sanders did not inform Broussard of their personal use of the proceeds of his loan to the debtor, and that some or all of Broussard's

1

allegations are true, the court dismissed the Trustee's claims of breach of fiduciary duty, conspiracy to commit fraud, and fraud against Chandler and Mr. Sanders as time barred by Louisiana Revised Statute 12:1502.[1] The parties were instructed to submit briefs on the remaining claims, which they did.

**A.     Section 547 of the Bankruptcy Code**

The Trustee's complaint states that it was brought under 11 U.S.C. § 547, which allows the trustee in a bankruptcy case to avoid certain preferential transfers to creditors. Section 547(b) of the Bankruptcy Code sets forth the elements that the trustee must prove in order to avoid a transfer as a preference: The transfer must be "of an interest of the debtor in property"

(1)     to or for the benefit of a creditor;

(2)     for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3)     made while the debtor was insolvent;

(4)     made

   (A)     on or within 90 days before the date of the filing of the petition; or

   (B)     between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5)     that enables such creditor to receive more than such creditor would receive if–

   (A)     the case were a case under Chapter 7 of this title;

   (B)     the transfer had not been made; and

   (C)     such creditor received payment of such debt to the extent provided by the provisions of this title.

---

[1]  See Order dated September 9, 2011.

Chandler and Mr. Sanders are both listed as creditors in the debtor's bankruptcy schedules, and their status as creditors was not contested at trial by either party. The Trustee did not prove, however, that the payments to Chandler and Sanders were for or on account of an antecedent debt. In fact, just the opposite seemed to be true, with the defendants characterizing the use of the funds as a loan, and Broussard characterizing it as fraud or embezzlement. Additionally, the Trustee does not meet the time period requirement that the transfer to an insider occur within one year of the petition date. The Chapter 7 petition was filed on March 28, 2008 and the checks were written to Chandler and Sanders at various times in 2003. Thus, the court finds that the Trustee has not met the burden of proving his case under § 547 of the Bankruptcy Code.

**B.   Conversion**

The Trustee also brings a claim of conversion against the defendants. "Conversion includes any act of dominion wrongfully asserted over the property of another in denial of or inconsistent with the owner's rights therein."[2] The defendants plead one year prescription as their defense to conversion.[3] The Trustee contends that the conversion claim did not come into existence until the defendants refused to repay the loans, which he states in his brief was sometime during the trial. The court finds, however, that the latest possible time the conversion claim arose was when Broussard discovered that the funds were missing and filed the amended petition in his state court action on June 23, 2006.[4] Thus, the conversion claim prescribed on

---

[2] *Edwards v. Max Thieme Chevrolet Co.,* 191 So. 569 La.App. 2 Cir. 1939).

[3] Louisiana Civil Code Article 3492.

[4] Case No. 2005-14487 filed in the 22nd Judicial District Court for the Parish of St. Tammany in the State of Louisiana. Additionally, the defendants' supplemental post-trial

3

June 23, 2007, which was well before the bankruptcy petition was filed in this case, March 28, 2008.[5]

**C.     Breach of Contract**

The Trustee also brings a claim of breach of contract against the defendants. It is unclear to the court from the Trustee's brief how this cause of action arises. There was no contract introduced into evidence at the trial, and the Trustee does not refer to one in his brief. At best, there is perhaps an action to recover money lent to the defendants (using the term "lent" loosely); in any event, in their briefs the defendants and the Trustee have framed the breach of contract claim as an action to recover money lent, so the court will analyze it as such.

The defendants' counsel has raised as a defense that any action to recover the money lent has prescribed under Louisiana Civil Code Article 3494.[6] Thus, the court must determine when prescription began to run. The Trustee argues that the three year prescriptive period does not begin to run until the money lent became due, which he contends was when the bankruptcy was filed. The Trustee's argument is that because the defendants admitted at trial that the monies they withdrew for themselves was a loan that would be converted to income if the project ever got funded, then prescription did not begin to run until it became obvious that the project would

---

memorandum states on page 6 that Broussard, in a deposition, stated that he first learned of the checks on January 25, 2007. This is even later than the date that the court has found Broussard may have known something was amiss, but still more than a year before the bankruptcy petition was filed.

[5] *Madden v. Madden,* 353 So.2d 1079 (La.App. 2 Cir. 1977)(one year prescription period for conversion claim).

[6] Article 3494 provides that an action for money lent has a liberative prescription period of three years. *See Slayter & Slayter, LLC, v. Ryland,* 953 So. 2d. 1000, 1003-04 (La.App. 3 Cir. 2007).

never be funded, i.e., when the defendants put the debtor into bankruptcy on March 28, 2008. Because the defendants themselves contend that the money lent was a loan that was not to be paid back until the project was funded, the Trustee's argument that prescription could not begin to run until it became clear that the project would never be funded is persuasive. The court finds that the date of the Chapter 7 petition, March 28, 2008, is the date from which the three year prescriptive period should begin. Thus, the breach of contract claim is timely.

Alternatively, the defendants' attorney argues that prescription begins to run from the date the money was lent, in 2003. As a rule, in the absence of proof of an agreement to the contrary, the money was due on demand at the time it was advanced.[7] The Trustee, however, raises as an exception to prescription the doctrine of *contra non valentum*, which holds that where a debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action, prescription is interrupted.[8] In a case such as this where the creditor is an L.L.C., which can act only through its managing member or members, and those members are the ones taking the money from the L.L.C., the court holds that the doctrine of *contra non valentum* applies. The court finds that in the event the petition date is not the proper date that prescription should have begun to run, October 19, 2005, which was when Broussard became aware that something was amiss and filed his state court lawsuit demanding an accounting, is the earliest possible date that Levitron could be deemed to have knowledge that a cause of action existed. When the bankruptcy petition for relief was filed on March 28, 2008,

---

[7] *Slayter v. Ryland. See also Lorraine Transfer Co. v. Daniel*, 11 So.2d 244 (La.App. 1942)(where there was no specific maturity date on loan, prescription of three years begins to run from the date of advancement).

[8] *Renfroe v. State Dept. Of Transportation & Development,* 809 So.2d 947 (La. 2002).

the cause of action to recover the money lent had not yet prescribed because three years had not passed since October 19, 2005. Under 11 U.S.C. § 108, the bankruptcy trustee had two years from the petition date to file a suit for the return of the money lent, which he did.[9] The court finds that the Trustee's action to recover the funds advanced by Levitron to Chandler and the Sanders is not prescribed.

Because the defendants' only defense to this cause of action is that the claim is prescribed, and because during the trial of this matter they did not contest that the money was advanced to them and has not been repaid, the court finds that the Trustee prevails on this cause of action, and the defendants are liable to Levitron to repay the funds advanced to them. According to the exhibits introduced at trial, funds were advanced to Jacob Chandler in the amount of $33,900.00[10]; funds were advanced to Deborah Sanders in the amount of

---

[9] 11 U.S.C. § 108(a) states:

> If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of–
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> (2) two years after the order for relief.

[10] Trial Exhibit 18, check dated April 8, 2003 made payable to Jacob Chandler in the amount of $12,500.00, and check dated April 16, 2003 made payable to Jacob Chandler in the amount of $2,000.00; Trail Exhibit 19, check dated May 1, 2003 made payable to Jacob Chandler in the amount of $4,500.00, check dated May 19, 2003 made payable to Jacob Chandler in the amount of $200.00, and check dated May 30, 2003 made payable to Jacob Chandler in the amount of $4,000.00; Trial Exhibit 20, check dated June 13, 2003 made payable to Jacob Chandler in the amount of $1,000.00, check dated June 17, 2003 made payable to Jacob Chandler in the amount of $100.00, and check dated June 27, 2003 made payable to Jacob Chandler in the amount of $4,500.00; Trial Exhibit 21, check dated July 15, 2003 made payable to Jacob Chandler in the amount of $600.00, and check dated July 28, 2003 made payable to

$13,500.00[11]; and funds were advanced to Ronald Sanders in the amount of $20,000.00.[12]

Additionally, funds were paid to the Sanders' mortgagee in the amount of $56,010.00.[13]

The court also grants the Trustee's motion for costs and interest at the federal judicial rate from the date of demand. The Trustee's request for attorney's fees is denied.

For the foregoing reasons, the court finds for the Trustee. A separate order will be entered in accordance with this opinion.

New Orleans, Louisiana, April 10, 2012.

*J. A. Brown*
Jerry A. Brown
U.S. Bankruptcy Judge

---

Jacob Chandler in the amount of $4,500.00.

[11] Trial Exhibit 19, check dated May 2, 2003 made payable to Deborah Sanders in the amount of $13,500.00.

[12] Trial Exhibit 20, check dated June 2, 2003 made payable to Ron Sanders in the amount of $10,000.00; Trial Exhibit 21, check dated July 2, 2003 made payable to Ron Sanders in the amount of $10,000.00.

[13] Trial Exhibit 18. Two checks made out to Union Planters Bank, one on April 8, 2003 in the amount of $15,005.00, and one on April 11, 2003 in the amount of $41,005.00.